**UNITED STATES of America**

v.

**William McLAREN.**

**No. 96–64 CR–J–99(H).**

United States District Court, M.D. Florida.

Jan. 28, 1997.

**216**

W. Ronald Jennings, Asst. U.S. Atty., Jacksonville, FL, for Plaintiff.

Robert Stuart Willis, Jacksonville, FL, for Defendant.

### ORDER ON OBJECTIONS TO MAGISTRATE JUDGE'S SUPERSEDING REPORT AND RECOMMENDATION

HODGES, District Judge.

This case involves a much litigated issue about the admission or suppression of the content of intercepted telephone calls made to and from a cellular telephone being used by the Defendant McLaren. The calls were intercepted by McLaren's employer, AT & T Wireless Services, Inc., which had provided the cellular phone to him, and the contents of the intercepted calls were then disclosed to Government agents resulting in the return of the pending indictment.[1]

The Magistrate Judge, at my request, has twice conducted evidentiary hearings concerning the issue, and I previously conducted one hearing myself. The Magistrate Judge initially recommended that the content of the intercepted telephone calls should be suppressed and excluded from evidence; and, more recently, in a Superseding Report (Doc. 85) made after the issue had been remanded to him for a second evidentiary hearing, the Magistrate Judge has again recommended suppression and exclusion of the intercepted communications. The Government has filed objections to that recommendation, and AT & T Wireless has moved for permission to appear and to submit a brief as amicus curiae in support of the Government's position.[2]

The Superseding Report and Recommendation of the Magistrate Judge is a model of painstaking scholarship both in terms of its fact finding and in terms of its review of the sparse applicable law. The case comes down, however, to a legal issue of first impression concerning the proper interpretation and application of 18 U.S.C. § 2511(2)(a)(i) to the facts of the case, and upon *de novo* review of that issue, I have decided that the Government's objections to the Report are persuasive. The Magistrate Judge's construction of the exemption granted by the statute to providers of communications services is, I believe, too restrictive. Accordingly, the recommendation of the Magistrate Judge will not be followed; the Defendant's motion to suppress will largely be Denied; and the disputed evidence will not be excluded on the ground that it was obtained in violation of 18 U.S.C. § 2510 et seq., that is, more specifically, it will not be excluded under 18 U.S.C. § 2515 assuming it is relevant.

---

1. The single count indictment charges a computer fraud offense in violation of 18 U.S.C. § 1030.

2. That motion (Doc. 98) is Granted, and the brief submitted with it has been considered.

## Discussion

Distilled to their essence, the operative facts are these.[3] Defendant McLaren was, at all material times, an employee of AT & T Wireless Services, or a predecessor company, engaged in the business of providing cellular telephone service in Florida and elsewhere. He was furnished a cellular telephone instrument for use in his work, and was also permitted to make personal use of the phone without charge at home. He had access to the company's subscriber information including some of the secret code numbers that are programmed into cellular telephone instruments in addition to the assigned area code and telephone number. These secret codes enable monitoring computers to properly identify each individual instrument in the field when it transmits or receives a telephone call either within its assigned geographic area or while "roaming" outside that area.

Given the nature of cellular telephone technology, it is possible to fraudulently obtain service through a process known as "cloning." If one is able to obtain the secret code number as well as the telephone number programmed into the cellular phone of an existing customer or subscriber, then a second instrument can be programmed or "cloned" with the same combination of numbers thereby enabling the cloned telephone to gain full service. Any use of the cloned instrument in making calls will be charged to the legitimate subscriber with the ultimate loss, of course, being absorbed by the telephone service provider when the fraud is discovered.

In late May or early June of 1995, AT & T Wireless Services became aware that a number of cloned cellular telephones were being fraudulently used in California. The legitimate subscribers whose telephones had been cloned lived in Florida and were customers of AT & T. The Company began its own in-house investigation. By mid July it had developed circumstantial evidence of sufficient weight to give rise to a reasonable suspicion, if not probable cause to believe, that McLaren had either been involved in the unautho-

rized cloning or had supplied others with the information necessary to facilitate the cloning.

On July 21, 1995, acting on that suspicion, AT & T began intercepting and recording all calls made to or from McLaren's cellular telephone during regular business hours each day up to as late as 7:30 p.m. Excluding the first weekend, the interceptions and recordings continued until August 3, 1995, a period spanning approximately two weeks.

The number of hours during which the interception and recording equipment was activated totaled 97.5 hours. A total of 211 separate calls or conversations lasting 440 minutes (7.33 hours) were recorded. No attempt was made to minimize the interceptions in the manner required by 18 U.S.C. § 2518(5) with respect to judicially authorized wire taps, and every call was recorded in its entirety regardless of the identity of the participants or the content of the conversation.

■ The statute provides as follows (18 U.S.C. § 2511(2)(a)(i)):

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

The Magistrate Judge logically, and I believe correctly, began his analysis of the legality of AT & T's actions by observing that there are three issues to be addressed in

---

**3.** With one exception noted *infra,* I adopt and confirm all of the more detailed findings of fact contained in the Magistrate Judge's Superseding Report and Recommendation.

applying this statutory exception.[4] First, the court must consider whether the provider of electronic communication service had reasonable cause to suspect that its property rights were being abused by a particular subscriber before it began to monitor that subscriber's phone. See *United States v. Clegg*, 509 F.2d 605, 613 n. 13 (5th Cir.1975), holding that this restriction is necessarily implied by the proviso at the end of the statute. Second, the Court must consider whether the interception activities were conducted upon what the Magistrate Judge denominated as a "permissible" cellular telephone. And third, the Court must consider whether the interception activities were reasonable.

With regard to the threshold requirement of a reasonable suspicion, the Magistrate Judge determined that the body of circumstantial evidence sorted out by AT & T before the interceptions began was easily enough to meet that need, and, as previously stated, I fully agree. No purpose would be served by reviewing that evidence again here. It is set out at length in the Magistrate Judge's Superseding Report.

■ The Magistrate Judge then turned to the issue of whether McLaren's company-issued cellular phone was a "permissible" phone to be monitored under the language of the statute and the circumstances of the case. He concluded that it was not. This was because, he said, there was no evidence before the interceptions began that the use

being made of McLaren's cellular phone was itself fraudulent or unlawful.[5]

In reaching his conclusion that AT & T had no right to monitor McLaren's phone absent evidence that the use of *that phone* was inherently fraudulent (as distinguished from merely being a probable source of evidence, in the form of incriminating conversations, that other telephone instruments were being used in a fraudulent manner), the Magistrate Judge relied primarily upon a number of decisions involving the so called "blue box" technology.[6] A blue box is a device that permits outgoing long distance calls to be made from a fixed location telephone in a way that circumvents the toll call billing system of the telephone company. In order to build a case against a blue box defrauder, the telephone service provider does not need to ascertain the full content of the conversation during any of the fraudulently made calls. Rather, the service provider needs only to (1) identify the number being called in order to establish the call as a long distance or toll call; (2) establish that the calls were answered, since there is no charge for merely calling a long distance number; and (3) monitor only the salutations of the speakers in order to establish the precise identity of the illegal caller. See *United States v. Clegg, supra*, 509 F.2d at 608.

It is not at all surprising, therefore, that the "blue box" cases refer to the monitoring

---

**4.** The case presents no Fourth Amendment issue at all. The Government was not involved until after the fact, and there are no circumstances even remotely suggesting that AT & T acted as a Government pawn or tool, either directly or indirectly. The issue, therefore, is one of statutory interpretation only.

**5.** The Government points out in its Objection to Report and Recommendation (Doc. 89, pages 8–9) that the Magistrate Judge made a factual error here because he had previously found that McLaren's cellular phone number was among those being called by the cloned telephones (Superseding Report at page 18). Thus, the Government says, the Magistrate Judge "missed the fact that any incoming calls from the cloners to McLaren were fraudulent because they caused a direct billing loss to the company," and if McLaren knowingly *received* and participated in those calls using his cellular phone, then such use was just as fraudulent as it would have been if he had

made the calls from that phone himself. The Government's point is well taken. But I do not predicate my disagreement with the Magistrate Judge on that issue alone. Even if one assumes that the use being made of McLaren's phone was not itself fraudulent or unauthorized at any time, I would still conclude that the statute permits what was done by AT & T in the circumstances of this case.

**6.** See, e.g. *United States v. Clegg*, 509 F.2d 605 (5th Cir.1975); *United States v. Cornfeld*, 563 F.2d 967 (9th Cir.1977); *United States v. Harvey*, 540 F.2d 1345 (8th Cir.1976); *United States v. Auler*, 539 F.2d 642 (7th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977); *United States v. Goldstein*, 532 F.2d 1305 (9th Cir.1976), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); and *United States v. Freeman*, 524 F.2d 337 (7th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976).

of telephone calls that are described as "illegal calls" (*Id.* at 612). Neither is it surprising that some of those decisions impose limitations restricting the scope of the monitoring to the three categories of information just discussed. See *United States v. Harvey* and *United States v. Auler, supra.* Thus, unlike the Magistrate Judge, I do not read those references by the courts deciding such cases to be reasoned holdings that inherent illegality in the use of an instrument must be shown in every case in order for a service provider to monitor the communication under § 2511(2)(a)(i). Nor do I see any language in the statute itself that compels that conclusion. The mere fact that the "blue box" cases, because of the nature of the technology and the nature of the fraud itself, all involved limited monitoring of inherently illegal or fraudulent telephone calls, does not mean that those are the only circumstances in which § 2511(2)(a)(i) will apply, and I am not aware of any decision that so states.

▆▆▆ This is not to say, of course, that a telephone service provider is free to monitor anyone's telephone whenever it wants merely because it has a reasonable suspicion that incriminating conversations might be intercepted concerning a telephone fraud of some sort being perpetrated by someone other than the subscriber of the monitored line or instrument. Nor do the Government or AT & T take such an extreme position in this case. Rather, they at least tacitly concede that there must be some substantial nexus between the use of the telephone instrument to be monitored and the specific fraudulent activity being investigated. Only by showing the existence of that nexus could the service provider demonstrate, as required by the statute, that such monitoring was "*necessary* . . . to the protection of the rights or property of the provider.*" (Emphasis supplied).

Here, whether the use of McLaren's cellular telephone was inherently unlawful on some occasions or not, the evidence was clearly sufficient to establish a strong nexus between his use of that instrument and the

known fraud, i.e., the use of the clones in California. The instrument itself was issued to him as an AT & T employee, not as a contract subscriber; he had access to the information necessary to carry out a cloning; some of the numbers being used in the California clones were numbers to which he had access, i.e., numbers that had been issued to his customers in Florida; some of the cloned telephones had been used to call his cellular instrument; and his instrument had been used to call other numbers, not the cloned telephones themselves,[7] but numbers that had also been called by the cloned telephones. This clear connection or nexus, then, between McLaren, his cellular telephone, and the known fraud, was enough to trigger the right of AT & T to begin monitoring McLaren's phone if otherwise reasonably necessary to the protection of AT & T's rights or property.

When this case first came before me after the Magistrate Judge's initial report and recommendation, it was not clear from the record whether AT & T had the capability, using its own facilities, to monitor, intercept or record the conversations being conducted through fraudulent use of the cloned equipment in California. I therefore remanded the case to the Magistrate Judge to resolve that issue of fact because if AT & T could have intercepted and recorded all of those calls through use of its own facilities, that arguably should have been a required first step (of considerable evidentiary promise) before undertaking to monitor McLaren's telephone which, although connected perhaps to the fraud, was not as directly involved. Stated another way, using the language of the statute, AT & T might have difficulty showing that interception of McLaren's calls was "a necessary incident to the protection of [its] rights or property" when it hadn't even attempted to intercept the fraudulent traffic on the clones themselves.

The Magistrate Judge has now resolved that fact issue finding that AT & T did *not* have the capability of intercepting the cloned instruments by using its own facilities, and I

---

7. It is fair to infer that the lack of calls to a cloned phone may be explained at least in part by the fact that a call to a cloned phone is also a call to the legitimate subscriber whose telephone number has been pirated in the cloning process.

therefore conclude for all of the reasons previously stated, contrary to the conclusion and recommendation of the Magistrate Judge, that AT & T had the right under the circumstances of this case to intercept McLaren's cellular phone calls pursuant to 18 U.S.C. § 2511(2)(a)(i).

 The third and final issue, then, is whether the method followed by AT & T in carrying out its interception and recording activities was reasonable. The requirement of reasonableness in the execution of the statutory exception is also a corollary of the statute's requirement that the interception be "a necessary incident to the protection of the rights or property of the provider." *United States v. Harvey* and *United States v. Auler, supra.* This does not mean, however, that a service provider acting under § 2511(2)(a)(i) in order to be reasonable, must necessarily comply with the requirement of "minimization" and the other strictures imposed upon judicially authorized wire taps under § 2518(5) because there is simply nothing in the statute that says so, and there is nothing in the statute suggesting that Congress intended it. Given that fact, taken together with the added consideration that there was, at the time of the interceptions made in this case, no decisional law under § 2511(2)(a)(i) offering guidance to telephone service providers in non blue box cases, I cannot say that the scope or duration of AT & T's interception, recording, and disclosure activity involving McLaren was so unreasonable as to warrant blanket suppression of the total fruits of the effort. I do agree, however, that the interception, recording and subsequent disclosure of complete telephone calls having nothing whatever to do with the cloning fraud under investigation was unreasonable because, obviously, such recordation and disclosure could not possibly be "necessary" to protect the provider from such fraud. It follows that evidence of any intercepted telephone calls that are not relevant to prove McLaren's alleged participation in

the cloning fraud being investigated at the time of such interception will be suppressed under 18 U.S.C. § 2515.[8]

See *United States v. Auler, supra.* The Court will determine the relevance issue relating to each recording or partial recording at the time it is offered at trial should there be an objection on that ground.

IT IS SO ORDERED.

---

**8.** The Court recognizes, of course, that this limited suppression determination under § 2515 is largely a moot point at this concluding stage of the analysis because if a particular telephone conversation, or partial conversation, is not relevant to prove the subject fraud, it would not be admissible anyway under FRE 402. And, whether a call containing evidence of other, unrelated criminal activity might be admissible or subject to suppression in some other proceeding or some other context is simply not before the Court and is not decided.