Michael L. DAVIS, Plaintiff–Appellant,

v.

John ZIRKELBACH, et al., Defendants–Appellees.

No. 97–1107.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1997.

Decided July 9, 1998.

E. Dean Singleton (argued), Owensville, IN, Verdelski V. Miller, Evansville, IN, for Plaintiff–Appellant.

David L. Jones, Keith M. Wallace (argued), Jones & Wallace, Evansville, IN, for Defendants–Appellees John Zirkelbach, Richard Whitlow.

Carl A. Heldt (argued), Shawn M. Sullivan, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, IN, for Defendants–Appellees Christian M. Lenn, Michael D. May.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The plaintiff in this case has showered us with issues relating to the kinds of claims an

accused person may bring against prosecutors, police, and municipalities under 42 U.S.C. § 1983 and related theories, after the prosecutors have dropped charges against that person. The district court disposed of all of Michael L. Davis's claims against the City of Evansville, Indiana, officials of the city, and officials of Vanderburgh County, Indiana, finding in some instances that the defendants were entitled to absolute or qualified immunity, in others that the statute of limitations barred Davis's claims, and in others that there was simply no right on which to recover. For the reasons that follow, we agree with the district court that the defendants were entitled to judgment in their favor, and we therefore affirm.

## I

The charges against Davis arose out of the suspicions of his employer, Michael May, that Davis was selling drugs from May's used car lot. Taking matters into his own hand in a way that led to numerous later complications, May decided to tap Davis's office telephone. The tap yielded a tape recording in which Davis could be heard discussing the sale of five pounds of marijuana with Jeannette Duncan. May turned the tape over to Officer Richard Whitlow, a narcotics officer with the Evansville police force. Immediately after listening to it, Whitlow went to his supervisor, Patti Dee Wazny, then the head of the city's narcotics division, and asked her whether the tape would be usable against Davis. Unsure herself, Wazny told Whitlow to get a formal legal opinion on whether the tape could be used. Whitlow called Christian Lenn, the deputy prosecutor responsible for giving the narcotics division legal advice, and asked him the same question. After briefly researching the issue, Lenn told the police that the tape could not be used to prosecute Davis, but, because the police had not participated in intercepting the telephone conversation, the information on it could be used to "flip" the female participant, Duncan, and convince her to become a confidential informant.

Apparently after some police pressure, Duncan did agree to cooperate with the police. On May 11, 1990, Officers Whitlow and

John Zirkelbach arrested Davis on charges of controlled substance violations. About a week later, prosecutors Lenn and Jonathan Parkhurst formally initiated criminal charges against Davis under Indiana's drug laws. On September 12, 1990, the state added a charge of intimidating a witness—Michael May, Davis's employer. Ten months later, on July 30, 1991, the state dismissed the criminal drug charges against Davis, and in December of 1991 it also dropped the criminal intimidation charges. Davis filed the present suit on September 9, 1992.

## II

As the case reaches us, Davis is pursuing claims against the following defendants: Officer Zirkelbach, Officer Whitlow, Art Gann (Chief of Police for the City of Evansville), the City of Evansville, Prosecutor Lenn, Prosecutor Parkhurst, and Stanley M. Levco (elected Prosecutor of Vanderburgh County, Indiana, during the times material to these events). In general, he claims that the prosecutor defendants (Lenn, Parkhurst, and Levco) violated his federal rights under § 1983 because they allowed the police to use the taped evidence, which was gathered in violation of both section 802 of the Omnibus Crime Control and Safe Streets Act of 1968 ("the Federal Wiretap Act"), 18 U.S.C. § 2520, and the Indiana Wiretap Statute, Ind.Code § 35–33.5 et seq. He also alleges that the prosecutors committed the state law torts of malicious prosecution and intentional infliction of emotional distress. With respect to the police defendants, Zirkelbach, Whitlow, and Gann, he makes essentially the same claims. Finally, he argues that the City was liable under both federal and state law based on a theory of respondeat superior liability. (He also named other defendants and raised certain other claims, but they have been dropped from the case by now.)

### A. The Prosecutors

In *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Supreme Court drew a careful line between the vulnerability of a prosecutor to suit for actions related to functions that are part of the judicial process, and the prosecutor's expo-

sure for acts related to other functions, such as investigation or the giving of legal advice. It reiterated the rule that prosecutors are entitled to absolute immunity from suit for the former actions. *Id.* at 491–92, 111 S.Ct. 1934; see also *Kalina v. Fletcher*, — U.S. —, — – —, 118 S.Ct. 502, 508–09, 139 L.Ed.2d 471 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 424, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). On the other hand, even when prosecutors are engaged in the sensitive tasks of giving legal advice to police officers, or swearing out an information to support a prosecution, the Court has held that they are entitled only to qualified immunity from suit. See *Kalina*, — U.S. at —, 118 S.Ct. at 510; *Burns*, 500 U.S. at 496, 111 S.Ct. 1934. In *Burns*, the Court stressed the fact that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486, 111 S.Ct. 1934 (citations omitted); see also *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). On the other hand, it also observed that "the qualified immunity standard is today more protective of officials than it was at the time that *Imbler* was decided." *Burns*, 500 U.S. at 494, 111 S.Ct. 1934 (footnote omitted). As we too have often had occasion to note, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997), *cert. denied*, — U.S. —, 118 S.Ct. 1054, 140 L.Ed.2d 117 (1998); *Forman v. Richmond Police Dep't*, 104 F.3d 950, 958 (7th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 563, 139 L.Ed.2d 403 (1997).

■ These principles underlie our evaluation of Davis's claims against the prosecutors. The district court found that Prosecutors Parkhurst and Levco had absolute immunity from all of Davis's claims against them. This was clearly correct. Davis's claims against Parkhurst and Levco arose solely from their decisions to commence and continue prosecuting him for his alleged drug and intimidation crimes. The fact that the prosecutions in some sense may have rested on violations of the Federal Wiretap Act and its Indiana counterpart

makes no difference. In *Burns*, the Court gave absolute immunity to prosecutors who allegedly had presented false testimony in a probable cause hearing. 500 U.S. at 491–92, 111 S.Ct. 1934; see also *id.* at 490 n. 6, 111 S.Ct. 1934 (acknowledging widespread agreement that prosecutors have absolute immunity for their conduct before grand juries); *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir.1992) (granting absolute immunity to prosecutor who allegedly presented false evidence in an executive clemency proceeding); compare *Kalina*, — U.S. at — – —, 118 S.Ct. at 509–10 (denying absolute immunity for prosecutor who swore out a false certificate of probable cause, thus crossing the line between advocacy and participation). In *Buckley*, the Court reaffirmed the rule that the prosecutor is absolutely immune for acts taken in preparing for the initiation of judicial proceedings or for trial, including the professional evaluation of evidence assembled by the police. 509 U.S. at 273, 113 S.Ct. 2606. This is precisely what Parkhurst and (to the extent one can say he was involved at all) Levco allegedly did: they evaluated the evidence collected by the police, including (we assume) the illegally recorded tape, and they decided to bring a judicial proceeding. Whether they were right or wrong in their evaluation of their right to use the taped evidence is of no moment. Under *Imbler*, *Buckley*, and *Burns*, they are entitled to absolute immunity from suit, and Davis's § 1983 claims against them were properly dismissed. The same result obtains under Indiana law for Davis's claims based on state law theories. See, *e.g.*, *Foster v. Pearcy*, 270 Ind. 533, 387 N.E.2d 446 (1979); *Hupp v. Hill*, 576 N.E.2d 1320, 1325 (Ind. Ct.App.1991); see also Ind.Code § 34–4–16.5–3(5) & (6).

■ Lenn's situation is different in one respect. Davis complains not only that Lenn participated in the initiation of the proceedings against him, but also that Lenn violated his rights when Lenn advised Officer Whitlow that the tape could be used to "flip" Duncan. We consider only the second of these points, because Lenn is entitled to absolute immunity under both federal and

state law for the acts he took to bring criminal proceedings against Davis for the same reasons his colleagues were. For purposes of federal law, *Burns* holds that prosecutors are entitled only to qualified immunity for their acts of giving legal advice to the police. 500 U.S. at 496, 111 S.Ct. 1934. Indiana law is more generous to the prosecutor, because it has rejected the Supreme Court's distinction between prosecutorial and administrative or investigative functions for purposes of immunity, as long as the prosecutor is acting within the scope of his or her authority. *Foster*, 387 N.E.2d at 448–49; *Hupp*, 576 N.E.2d at 1325. Even if Lenn's advice about the reach of the wiretap laws was wrong, the immunity he enjoys under Indiana law is broad enough to protect him. We conclude further that even if Davis's complaint were read to assert that Lenn deliberately set out to disregard the wiretap laws, and if we assumed that such an action was outside the scope of his authority, Davis's state law claims against Lenn were properly dismissed on other grounds, which we discuss below.

■ 1. *Federal Wiretap Statute: Lenn.* Ordinarily, because Lenn is entitled to qualified immunity from a suit based on the legal advice he gave to the police officers, we would ask whether his actions violated a clearly established statutory or constitutional right of which a reasonable person would have known. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir.1996). Qualified immunity is a threshold question that a court should resolve as soon as possible, to spare the official from the burden of defending an action. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 306–08, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Casteel v. Pieschek*, 3 F.3d 1050, 1052–53 (7th Cir.1993) ("[T]he availability of immunity in a given case should be decided as early as possible in litigation."), quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435 (7th Cir.1993). In this case, however, Davis's suit against Lenn cannot go forward for a more basic reason: the statute of limitations. Davis had to bring his claim under the Federal Wiretap Act within two years of the time when he had

"a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). (It is unclear whether Davis's claim against Lenn for violating his civil rights, under § 1983, is properly before us, but the claim is derivative of Davis's wiretap act claim and the statute of limitations applicable under Indiana law to § 1983 claims is also two years. See *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir.1997).)

■ Like many statutes of limitation, this one does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it. This means that much of the parties' dispute over when precisely Davis learned that his telephone conversation had been taped is beside the point. Davis argues that he did not know for sure until September 12, 1990, when Officer Zirkelbach testified at his deposition that the tape recording existed. His suit, which was filed on September 9, 1992, fell within two years of that date, but that would be important only if actual knowledge were the standard. Much earlier than September 12 (or September 9), Davis had reason to know that something was afoot. Duncan, the other party to the conversation, told him on May 21 that the police had a tape of them talking. Davis acknowledges that this shows he knew before September that *something* had been taped, but he said it might have been a nontelephonic conversation. That might be, but Duncan's revelation to him was at least enough to put him on inquiry notice that his rights might have been invaded. See, *e.g.*, *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990) (Wiretap Act); *Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332, 1334–35 (7th Cir.1997) ("Inquiry Notice" under Rule 10b–5). We conclude, therefore, that his suit against Lenn based on the Federal Wiretap Act, and derivatively § 1983, is barred by the statute of limitations. Given this disposition, we have no occasion to discuss the question whether Lenn "used" or "endeavored to use" the tape for purposes of 18 U.S.C. § 2511(1)(d), although we note that Lenn has argued that his act of giving legal advice about the tape did not constitute "use" as a matter of law.

■ 2. *State Law Claims: Lenn.* The principal state law claim that Davis has asserted against Lenn rests on the Indiana Wiretap Statute, Ind.Code § 35–33.5 *et seq.* As we said before, under Indiana's more generous approach to prosecutorial immunity Lenn cannot be held liable for giving erroneous legal advice about the ways in which the tape could or could not be used, as long as he was acting within the scope of his authority. Assuming for the sake of argument that Davis could show that Lenn had strayed beyond the scope of his authority or that the Indiana Wiretap Statute abrogated that immunity, Davis's claim runs aground on another problem. The effective date of the Indiana Wiretap Statute was July 1, 1990. See Ind.Code § 1–1–33(b). The interception took place in May, 1990, before that date. Davis argues that his suit was timely because disclosure took place after the effective date of the law, as late as September 1990. He relies on language in the statute describing when an action may be brought, which allows someone to sue within two years from "the date that the interception, disclosure, or use of a communication in violation of this article initially occurs whichever is later." Ind.Code § 35–33.5–5–4(d). For limitations purposes, we agree that this statute looks a bit confusing, and that it indeed appears to permit the statute of limitations period to begin running at the latest of the date of inappropriate interception, disclosure, or use of a communication. But there is a fundamental problem with Davis's position, which is that the interception itself did not violate the statute at the time it took place, because the statute had not yet taken effect. Davis grants that the interception did not violate the act, and that the first "use" of the communication was in July, more than two years before he filed suit. He argues that *disclosure* still took place less than two years before this litigation commenced, relying on the somewhat obscure way in which the statute identifies the time when the period of limitations begins to run. But no disclosure in violation of the statute ever occurred, since Ind.Code § 3533.5–5–1 limits only disclosures of "interception[s] under this article." As there was no interception governed by the Indiana Wiretap Statute, there can be no disclosure of any such interception, and thus Davis has no claim under the law.

### B. *The Police*

■ We can dispose quickly of Davis's claims against Chief of Police Gann. It is enough to recall that there is no respondeat superior liability under § 1983. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Baskin v. City of Des Plaines*, 138 F.3d 701 (7th Cir.1998). Davis has made no showing that Gann had any knowledge whatever about this particular incident; thus, he cannot show that Gann intentionally violated his constitutional rights. The same result follows for Davis's claim against Gann under the Federal Wiretap Act. That law permits an aggrieved person to sue "the person or entity" that has engaged in a violation of the statute. 18 U.S.C. § 2520(a). This language is sufficiently similar to that of § 1983 that we believe the same principles should apply: that is, a "person" should not be liable merely on respondeat superior grounds, but only when he or she has personally engaged in a violation of the act, and an entity should be liable only if it has a policy or practice that make it reasonable to attribute the violation to the entity. *Cf. Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Davis dismissed his state tort claims against Gann prior to this appeal, and they are therefore not before us. Finally, his claim against Chief Gann under the Indiana Wiretap Statute fails for the same reason the claim could not proceed against Lenn.

With respect to Officers Zirkelbach and Whitlow, the most important issue we must discuss is their qualified immunity from suit for the claims based on § 1983 and the Federal Wiretap Act. The district court found that their use of the tape was a clear violation of established law, but that the officers were protected by the "extraordinary circumstances" exception to the lack of immunity that was first identified in *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. We agree that this is the proper focus of the officers' immunity argument. In *Harlow*, the Supreme Court explained its scope as follows:

If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.* at 818–19, 102 S.Ct. 2727. Although this court has not had occasion to consider the way in which advice of counsel might support a claim of extraordinary circumstances, *cf. Tangwall v. Stuckey*, 135 F.3d 510, 512 n. 3 (7th Cir.1998) (not reaching "advice of counsel defense" since officer's conduct was otherwise entitled to qualified immunity), the Tenth Circuit has done so in *V–1 Oil Co. v. Wyoming*, 902 F.2d 1482 (10th Cir.1990). In that case, the court drew a distinction between routine advice of counsel and the more unusual situations in which such advice would objectively support a claim of qualified immunity:

The circumstance most often considered for treatment as "extraordinary" is reliance upon the advice of counsel. Of course such reliance is not inherently extraordinary, for few things in government are more common than the receipt of legal advice. Still, reliance on the advice of counsel in certain circumstances rises to the level of extraordinary circumstances.... Relevant factors include how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and how soon after the advice was received the disputed action was taken.

*Id.* at 1488–89 (internal quotations, citations, and footnotes omitted). See also *Hollingsworth v. Hill*, 110 F.3d 733, 740–41 (10th Cir.1997); *Buonocore v. Harris*, 134 F.3d 245, 252–53 (4th Cir.1998) (reliance on counsel's advice is a factor in whether a defendant has demonstrated extraordinary circumstances, but is not alone enough).

■ These factors support the district court's decision to grant qualified immunity to Officers Whitlow and Zirkelbach. They went to Lenn, the lawyer specifically responsible for giving advice to the narcotics division in the police force. He gave them precise advice about the way this particular tape could be used, which took into account the circumstances of how it had been made, who had been responsible for the intercept, and how the police had received it. Lenn imposed limits on their use of the tape—permitting use to convince Duncan to cooperate, but not direct use—which the officers respected. *Cf. Buonocore*, 134 F.3d at 253 (where official failed to follow legal advice he could not rely on it to establish entitlement to qualified immunity). They acted promptly after receiving the advice. Finally, the police had no reason to believe that Lenn's advice was erroneous. The Supreme Court itself has drawn a line in many contexts between permissible uses of evidence collected in violation of the Constitution, in which it has banned use for direct purposes but has permitted it for impeachment or other indirect purposes. See, *e.g., Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (testimony obtained despite violation of Sixth Amendment right to counsel); *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (testimony obtained in violation of *Miranda* rights); *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (evidence obtained in violation of the exclusionary rule); *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (same). This indicates that the officers were objectively reasonable in their reliance on Lenn's advice. A contrary conclusion on these facts would create perverse incentives for police officers faced with an unusual problem: if they sought advice of counsel that turned out to be wrong, they would be liable, but if they maintained a deliberate ignorance, they might be able to get away with arguing that no reasonable officer would have known that the rule applied to their particular situation. *Cf. Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Neither *Harlow* nor any other Supreme Court decision of which we are aware compels us to

reach such an undesirable solution. Officers Whitlow and Zirkelbach are therefore entitled to qualified immunity for the federal claims that have been brought against them.

Davis also originally included claims against Whitlow and Zirkelbach under the Indiana Wiretap Statute and under state law tort theories of malicious prosecution and intentional infliction of emotional distress. Davis has conceded that his claim of malicious prosecution against the police is no longer "applicable," which we take to mean is no longer in the case. He dismissed his claim of intentional infliction of emotional distress against the police prior to taking this appeal, and thus it too is no longer before us. Finally, his claim under the Indiana Wiretap Statute against the police fails for the same reasons it cannot succeed against Lenn: the Act was simply not in effect at the time of the interception, which means that for state law purposes the tape was not unlawfully collected and that there was nothing improper about its use.

## C. *The City of Evansville*

The only remaining claims against the City are those under the Federal Wiretap Act, § 1983, and the Indiana Wiretap Act. For the reasons we have already discussed, all three of these claims were properly dismissed. Davis has alleged nothing to suggest that the City had a policy or practice of unlawfully using intercepted communications in violation of the Federal Wiretap Act. Under *Monell* and *Brown*, this is enough to doom his § 1983 claim. It also shows that the "entity" known as the City of Evansville did not itself engage in a violation of the Federal Wiretap Act, because we have held that the same principles of respondeat superior that govern entity liability under § 1983 should be applied to that statute. Once again, his claims under the Indiana Wiretap Act collapse because it was not in effect at the pertinent time.

Davis may be unhappy that he became a suspect in a drug case that was investigated by the Evansville authorities, but the fact that he was investigated does not inevitably mean that any of those authorities, or the City itself, violated his statutory or constitu-

tional rights. To the contrary, under the facts of this case we agree with the district court that neither the prosecutors, the police, nor the City itself is liable to Davis for the actions that were taken in conjunction with his investigation or prosecution. We therefore AFFIRM the judgment of the district court in all respects.