**Michael McCLELLAND, Plaintiff,**

v.

**Detective D. McGRATH,
et al., Defendants.**

**No. 97 C 6295.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 23, 1998.

Reed Clayton Lee, J.D. Obenberger and Associates, Chicago, IL, for Plaintiff.

Alec McAusland, City of Chicago Law Department Corp. Counsel, Chicago, IL, Robert W. Barber, Liza Marie Franklin, City of Chicago, Dept. of Law, Chicago, IL, for Defendants Detectives McGrath, Krakausky, O'Boyle, Nolan, Sgt. Augustine.

Brian L. Crowe, City of Chicaago, Law Dept., Corp. Counsel, Chicago, IL George John Yamin, Jr., City of Chicago, Dept. of Law, Chicago, IL, for Defendant City of Chicago.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

At first glance, it might seem the very definition of chutzpah for Michael McClelland to sue the City of Chicago and several of its police officers for asking a phone company to intercept a call he made on a cloned cellular phone.[1]  The user of a cloned cellular phone—a phone which has been rigged to imitate a legitimate cellular phone—is stealing from the phone company, and phone companies routinely investigate such theft.

The complication in this case is that the officers were investigating a kidnaping, not cellular service theft.  Adalberto Valdavia had been abducted, and the officers asked Ameritech, the local telephone service provider, to trace the ransom calls.  Ameritech determined that the calls were being made on a cellular line dedicated to Cellular One, and Cellular One informed Ameritech, who informed the officers, that the ransom calls had indeed been made on a cellular telephone and that other calls on the same line had been made almost simultaneously in another part of the state, where the cellular subscriber was located.  From this Cellular One concluded that the ransom calls were being made on a cloned phone, and Cellular One indicated that it was able to monitor any conversations involving the cloned phone and

---

1.  The "classic illustration" of chutzpah, according to Professor Dershowitz, is "the youth who murders his parents and then pleads for mercy on the grounds that he is an orphan."  ALAN M. DERSHOWITZ, CHUTZPAH 18 (1991).

to isolate its approximate location. The officers asked Cellular One to relay any information from those calls which might assist them in finding the kidnaper, and Cellular One agreed.

Late that afternoon, someone used the cloned phone to call a lifeguard station and informed the station that he would not be able to come to work that day. Cellular One intercepted the call and relayed the information to Ameritech, who informed the officers, who dispatched other officers to the lifeguard station. (No judge ever approved this intercept.) The officers learned that the caller was Michael McClelland, whom they arrested after securing Valdavia's release. McClelland was incarcerated pending trial on aggravated kidnaping charges, but for reasons unknown to us, his prosecution was terminated.

■ McClelland learned of the interception during his prosecution, and he filed a complaint with this Court alleging that the officers' failure to obtain judicial authorization for the interception constituted a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which is codified at 18 U.S.C. §§ 2510–2520 and is popularly known as the "Wiretap Act." The defendants moved to dismiss the complaint on the ground that the Wiretap Act contains an exemption for interceptions by an employee of a phone company who "intercept[s], disclose[s], or use[s] that communication in the normal course of his employment while engaged in any activity which is a necessary incident . . . to the protection of the rights or property of the provider of that service." 18 U.S.C. § 2511(2)(a)(i); *see also id.* § 2510(5)(a)(ii). They argued that since Cellular One intercepted the call and since Cellular one intercepts communications on cloned phones "as a necessary incident . . . to the protection of [its] rights or property," *id.*

§ 2511(2)(a)(i), the interception of the call and the subsequent use of its contents was lawful—or even if it was not, a reasonable officer could not have known that. We disagreed and in an unreported order refused to dismiss the complaint or grant the officers qualified immunity because according to McClelland's allegations, the Cellular One employees were acting as agents of the officers, which if true removed this interception from the statutory exemption. Now before us is the defendants' motion for summary judgment—essentially the same motion in a new package.[2]

By way of background, the prohibition on wiretapping is found at 18 U.S.C. § 2511(1) and generally forbids intercepting communications (or procuring an interception) as well as disclosing or using of the contents of an intercepted communication. Violation of the Wiretap Act is a crime, *see id.* § 2511(4), and a private right of action is provided at *id.* § 2520. As noted earlier, however, the Wiretap Act exempts phone companies acting in "protection of the[ir] rights or property," *id.* § 2511(2)(a)(i), *see also id.* § 2510(5)(a)(ii), and it also provides a mechanism by which law enforcement officers may ask a judge for prior approval to intercept a communication, *see id.* § 2518(1)-(6), or for after-the-fact authorization in emergency situations, in which case the officers are required to seek judicial approval within 48 hours, *see id.* § 2518(7).

■ The defendants are of course correct that Cellular One is entitled to "intercept, disclose, and use," in the words of § 2511(2)(a)(ii), communications and their contents in order to "protect [its] . . . rights or property." McClelland does not dispute this point—in fact he did not even sue Cellular One. And obviously he would not have had a gripe with the officers had Cellular

---

**2.** The only difference is that this motion also asks that we grant summary judgment to the City of Chicago, on the ground that McClelland has made no showing that the City had a "policy or practice" of violating Title III, *Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir.1998), and a few of the individual officers (defendants O'Boyle, Augustine, and Nolan), on the ground that they were not personally involved in the intercept, *see id.* McClelland concedes that we must grant summary judgment to the City, Au-

gustine, and Nolan, but he argues that O'Boyle is not entitled to summary judgment because O'Boyle prepared internal police reports indicating that McClelland's conversation had been intercepted. So far as is relevant here, however, Title III only imposes liability on a person who "intercepts" a communication (or procures an interception) or "uses" or "discloses" the communication's contents, and O'Boyle did none of those things, so he too deserves summary judgment.

One intercepted his cloned phone calls on its own and then turned to the officers for assistance. *See United States v. Pervaz,* 118 F.3d 1 (1st Cir.1997); *United States v. Manning,* 542 F.2d 685, 686 (6th Cir.1976) (per curiam); *United States v. McLaren,* 957 F.Supp. 215 (M.D.Fla.1997).

■ What the officers do not seem to understand, however, is that *they* are not free to ask or direct Cellular One to intercept *any* phone calls or disclose their contents, at least not without complying with the judicial authorization provisions of the Wiretap Act, *regardless* of whether Cellular One would have been entitled to intercept those calls on its own initiative. This is why the courts in *Pervaz* and *McLaren,* the only two cases on which the officers rely, go to such lengths to determine whether the phone companies in those cases were acting at the request or direction of police officers. In *Pervaz* the important question was "were the employees acting as agents of the government?," for if they were, "the requirements of the Fourth Amendment would override [Title III] authority."[3] 118 F.3d at 5. Since the officer in that case only found out about the interceptions after they had taken place, the First Circuit held that the interceptions were motivated by a desire to protect the phone company, not to help the officer, and the phone company employees were therefore *not* acting on the government's behalf. Likewise in *McLaren,* there were "no circumstances suggesting that AT & T acted as a Government pawn or tool, either directly or indirectly." 957 F.Supp. at 218 n. 4.

This case is different, for here a jury could reasonably find that Cellular One was acting as an "instrument or agent" of the government. The officers, after being informed by Cellular One that it could monitor calls made on the cloned phone, asked that Cellular One relay the contents of those calls to them. This shows both that Cellular One acted at the government's request and (ergo) that the government knew of and agreed to Cellular

One's actions, two important factors in the "instrument or agent" analysis. *See United States v. Shahid,* 117 F.3d 322, 325 (7th Cir.1997). In addition, it seems clear that Cellular One was motivated by its desire to help the officers rather than to protect its own property, another important "instrument or agent" factor, *see id.,* as the content of the communication they passed along to the officers—that the caller wouldn't be at work that day—is irrelevant to a cloned phone investigation but is very useful to a kidnaping investigation. *Cf.* 18 U.S.C. § 2511(2)(a)(i) (phone company may intercept, disclose, and use communications and their contents only as a "necessary incident . . . to the protection of [its] rights or property"); *Campiti v. Walonis,* 611 F.2d 387, 393 (1st Cir.1979) (intercept "had nothing to do with telephone company equipment or rights"); *United States v. Auler,* 539 F.2d 642, 646 (7th Cir.1976) (telephone companies which intercept calls pursuant to § 2511(2)(a)(i) may forward to the police no more of the content of those calls than is necessary to protect telephone company rights); *United States v. Logan,* 423 F.Supp. 146, 148–49 (S.D.Ill.1976) (phone company's intercepts were overbroad but "only information authorized by the statute was turned over to the authorities").

■ We must also reject the officers' renewed plea for qualified immunity, which protects them from liability unless their conduct violated "clearly established . . . rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We believe that this defense will rarely, if ever, be available to officers accused of violating the Wiretap Act, for a similar reason to that given a few months ago by the First Circuit in *Berry v. Funk,* 146 F.3d 1003, 1013 (C.A.D.C.1998). The Wiretap Act sets forth, in great detail, the hoops through which an officer who wishes to intercept a communication or disclose or use its contents must jump, *see generally Gelbard v. United States,*

---

**3.** This is why the defendants are mistaken to suggest, as they do, that "Where the *Pervaz* court assessed the government's involvement, it was within the context of a Fourth Amendment question, not a Title III question." Defs.' Reply at 6 n. 2. The Fourth Amendment binds government actors and their agents, who to avoid violating it must comply with the judicial authorization provisions of Title III. *See generally Dalia v. United States,* 441 U.S. 238, 256 n. 18, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979); *United States v. Bianco,* 998 F.2d 1112, 1121 (2d Cir.1993).

408 U.S. 41, 46, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and it even provides a procedure by which an officer may secure after-the-fact authorization for an emergency interception, as this one clearly was. *See, e.g., Nabozny v. Marshall,* 781 F.2d 83 (6th Cir.1986). The plain language of the statute "clearly establishes" the rights of someone using a telephone as against the police, and accordingly it has been crystal clear in this circuit, at least since 1976, that [i]n no situation may the Government direct the telephone company to intercept wire communications in order to circumvent the warrant requirements of a reasonable search." *Auler,* 539 F.2d at 647.

It is easy to think that McClelland, the accused kidnaper and confessed cellular service thief, has no right to sue the officers whose jobs required that they find the kidnaper with all possible speed. But anyone who cannot shake this intuition would be wise to recall the sage words of Justices Holmes and Brandeis in an early wiretap case. The former thought it a lesser evil "that some criminals should escape than the government should play an ignoble part," and the latter wrote that "In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously," since if "the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." *Olmstead v. United States,* 277 U.S. 438, 469, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Holmes, J., and Brandeis, J., dissenting). They dissented that day, but their view has prevailed.

The motion for summary judgment is granted in part and denied in part. It is so ordered.