COWEN, Circuit Judge,
dissenting.
In this appeal we must decide whether a police officer is entitled to qualified immunity when, on the night federal income taxes were due, he arrested John Paff and James Konek, who stood on a sidewalk outside a post office, handing out leaflets protesting the government’s taxation policies. At the time of the arrests peaceful leafleting on a postal sidewalk was indis *438 putably legal: the controlling postal regulation does not ban leafleting and instead only prohibits disorderly conduct and soliciting alms or contributions. See 39 C.F.R. § 232.1. If there were any doubt about how to interpret this regulation, we have previously said, while upholding the ban on solicitation, that protesters can distribute leaflets:
[Protesters] may publicly express their views while on postal property, they may distribute political literature, and engage patrons in any lawful dialogue. In fact, they may even solicit financial contributions immediately outside postal premises, and perhaps even on certain portions of postal property. They are simply required not to engage in solicitations at a place where such activities would obstruct necessary and nonpolitical post office operations.
United States v. Bjerke, 796 F.2d 643, 652-53 (3d Cir.1986). The availability of leafleting was important to our decision in Bjerke because in upholding the regulation’s ban on solicitation we relied in part on the fact that leafleting and other types of expressive activity remain legal. Id. at 650.
Several years after Bjerke five Justices on the Supreme Court also interpreted the relevant postal regulation to allow peaceful leafleting, and the remaining four Justices never maintained that the regulation prohibits it. In Justice Kennedy’s concurrence he said, “The regulation, as the United States concedes, expressly permits the respondents and all others to engage in political speech on topics of their choice and to distribute literature soliciting support, including money contributions, provided there is no in-person solicitation for payments on the premises.” United States v. Kokinda, 497 U.S. 720, 738-39, 110 S.Ct. 3115, 3126, 111 L.Ed.2d 571 (1990). Much as we reasoned in Bjerke, Justice Kennedy also relied in part on the availability of these other expressive activities when he concurred in the Court’s judgment that the solicitation ban was permissible. Id. at 739, 110 S.Ct. at 3126. The four Justices in dissent similarly agreed that the postal regulation permits “labor picketing, soapbox oratory, distributing literature, holding political rallies, playing music, circulating petitions, or any other form of speech not specifically mentioned in the regulation.” Id. at 750, 110 S.Ct. at 3132. Even Justice O’Connor’s opinion for the remaining four Justices conceded that “individuals or groups have been permitted to leaflet, speak, and picket on postal premises,” and never expressly said that the regulation prohibited such conduct. Id. at 730, 110 S.Ct. at 3121.
Thus it is clearly established that under the postal regulation protesters have a legal right to hand out leaflets, provided they do not engage in disorderly conduct or solicit money to be paid on the postal premises. Because the undisputed facts show that Paff and Konek were leafleting peacefully and were not engaging in unlawful solicitation, Officer Kaltenbach did not have probable cause to arrest them, and therefore they have a valid claim under the Fourth and Fourteenth Amendment. See, e.g., Mackinney v. Nielsen, 69 F.3d 1002 (9th Cir.1995) (because California law did not prohibit individuals from writing in chalk on a public sidewalk, the officer who arrested the plaintiff was not entitled to qualified immunity from the plaintiffs Fourth Amendment claim).
The majority apparently believes that Kaltenbach had probable cause to arrest Paff and Konek because the protesters were potentially an obstruction (although the majority raises this point in its discussion of the First Amendment claim). But the regulation’s prohibition of disorderly conduct can hardly be construed to make an offense out of “potentially” committing disorderly conduct. The portion of the regulation addressing disorderly conduct states,
Disorderly conduct, or conduct which creates loud and unusual noise, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stair *439 ways, and parking lots, or which otherwise tends to impede or disturb the public in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.
39 C.F.R. § 232.1(e). The majority suggests in footnote 5 of its opinion that this provision gives local postmasters discretion to decide whether someone’s conduct is “likely” to violate § 232.1(e) and that police may rely on the postmaster’s judgment. Nowhere in the regulation does the word “likely” appear; the provision prohibits actual disorderly conduct, not potential disorderly conduct. Not only is the majority’s position unsupported by the language of the regulation, it also appears to subject members of the public to a fíne or imprisonment, see § 232.1(p)(2), or arrest at a minimum, because a postmaster deems them likely to commit an offense, even though their conduct has been innocent so far. How will people know when they are potentially committing disorderly conduct as they try to enjoy their judicially recognized right to leaflet peacefully? The Supreme Court has firmly rejected laws for vagueness. See, e.g., City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999); Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The Court has also rejected arrests for disorderly conduct when the police thought the protesters’ conduct was likely to result in disorderly conduct. Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969). And the Court has rejected a law that made illegal having a disposition to commit an offense. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).
To appreciate the dangers of allowing arrests for “potentially” committing disorderly conduct, I think it is worth reviewing in some detail just how little evidence there is that the plaintiffs’ leafleting was creating any problem. According to the undisputed facts, before Paff or Konek handed a leaflet to anyone, they first asked if the person wanted one and were not confrontational. The two only approached people leaving the post office, and were joined by a total of three other protesters, hardly creating a threatening rally. While it may seem reasonable to assume that this particular post office was busy on the night taxes were due, there is no evidence or allegation that a large number of people in fact were crowding into this post office. For all we know one person passed every ten minutes. The post office in question is also set back from the road and appears, in some admittedly dark photocopied pictures in the appendix, to be surrounded by a fair amount of open land, suggesting that the protesters were not standing in close quarters. Paff stated that he and the four other protesters “stood on the sidewalk area between the parking lot and the front door of the East Brunswick Post Office” and were “within two feet” of some newspaper vending machines. App. at 60.
In the postmaster’s call to the police department, he made no reference to any obstruction that the protesters were creating. A transcript of that call shows that after identifying himself, the postmaster said, “We have people on the property giving out pamphlets, we’ve asked them to leave the property and they won’t. Could you send somebody down?” He explained that the post office was open until midnight and then made a partially inaudible remark about picket signs. ‘With picket signs?” the dispatcher asked. The postmaster responded, ‘Tes, it’s a Libertarian party or something.” He continued, “They can go out on public property which is out by the street so they can’t be on our sidewalk in front of our front door.” After the postmaster gave his name, the dispatcher said, “O ... okay, we’ll send someone out.” App. at 160. This is all the relevant information the postmaster conveyed to the police dispatcher.
*440 When Kaltenbach arrived, the postmaster again identified himself and said that the protesters could move out to Cranbury Road. On the record before us there is no evidence — nr even allegation — that the postmaster told Officer Kaltenbach that the protesters had obstructed the ingress or egress of patrons of the post office, much less that the postmaster offered any evidence in support of such an allegation had it been made. At best the postmaster told Kaltenbach the protesters were a “potential obstruction,”[1] an assertion that by itself is insufficient to provide probable cause for the arrest and that in any event seems poorly supported, given the protesters’ small numbers and their peaceful conduct.
By comparison, when the police have invoked the risk posed by a hostile audience to justify arresting protesters who were conducting an otherwise lawful demonstration, the Supreme Court has required considerably more evidence of imminent harm than was present in our case. See, e.g., Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). Given that the leafleting in our case was legal, I believe that there should have been much more evidence of an imminent and significant disruption before an arrest was made. “[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression.” Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969); Zamboni v. Stamler, 847 F.2d 73, 78 (3d Cir.1988).
It is also worth noting that the postmaster’s suggested alternative that the protesters move out to the public road was highly problematic. As Paff explained, Cranbury Road did not have a sidewalk and was unlit (events took place at 9 p.m. on April 15th); and it was not possible to hand out leaflets to passengers in cars that Paff estimated were traveling approximately 40 miles per hour through the night. See App. at 173-74. Furthermore, although the majority suggests that the postmaster’s ban on the protester’s leafleting was limited to tax night, nothing in the record indicates that the postmaster said his ban was restricted in this way. He simply called the police and asked them to remove the protesters. And even if we adopted this after the fact narrowing of the restriction, the message the protestors sought to convey was undermined when they were not allowed to conduct their protest on tax day. In the end, however, I think that even if Cranbury Road had offered a viable alternative or the postmaster had limited his ban to tax night, neither factor would be enough to justify qualified immunity; the protesters had a right to leaflet peacefully where they were.
When an officer violates clearly established law and the facts reasonably known by the officer indisputably show that the officer’s conduct was illegal, qualified immunity is rarely appropriate. An officer can only obtain qualified immunity for violating clearly established law when the officer shows “extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard.” In re City of Philadelphia Litigation, 49 F.3d 945, 961 (3d Cir.1995)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).
*441 Under this standard Kaltenbach’s reliance on the postmaster should not constitute “extraordinary circumstances.” Even reliance on the advice of counsel may not be sufficient to constitute extraordinary circumstances. See, e.g., Davis v. Zirkelbach, 149 F.3d 614, 620 (7th Cir.1998) cert. denied, 525 U.S. 1121, 119 S.Ct. 902, 142 L.Ed.2d 901 (1999); Buonocore v. Harris, 134 F.3d 245, 252-53 (4th Cir.1998); V-1 Oil Co. v. Wyoming, 902 F.2d 1482 (10th Cir.1990). And the burden of proving extraordinary circumstances is carried by the officer. Buonocore, 134 F.3d at 252; Cannon v. City and County of Denver, 998 F.2d 867, 874 (10th Cir.1993). In our case the postmaster did not mention any legal authority for his action, despite the fact that Paff cited the postal regulation that he said allowed him to leaflet. Kaltenbach also did not perform so much as a cursory independent investigation to see if the protesters were posing any problem, nor did he inquire into whether their conduct actually was illegal. It is true that after arresting Paff, Kaltenbach radioed his supervisor, but even if we make the dubious assumption that this call could constitute “extraordinary circumstances,” a transcript of that conversation shows that the purpose was not to obtain advice on whether the leafleting was legal, but merely to advise headquarters that Kaltenbach was bringing in the arrestees. Moreover, Kal-tenbach could have made additional inquiries given that, as the facts above indicate, the protesters’ conduct was not creating an impending conflict requiring immediate action.
The protesters’ claim under the First and Fourteenth Amendments poses closer questions. The majority operates under the assumption that unless the protesters can show that the First Amendment clearly prohibits the Postal Service from issuing any regulation prohibiting leafleting, then the protesters must lose their claim under the First Amendment. I disagree with this assumption. If the postal regulations permit leafleting, then I think the protesters have a valid First Amendment claim, even if the clearly established law does not flatly prohibit the Postal Service from banning all leafleting in the future. Much as the government cannot discriminate among speakers when it creates a limited-purpose public forum, see, e.g., Widmar v. Vincent, 454 U.S. 263, 267-68, 102 S.Ct. 269, 273-74, 70 L.Ed.2d 440 (1981), the government also violates the First Amendment in my view if it has people in a nonpublic forum arrested for engaging in a type of expressive activity that the government’s own regulations permit. This should be especially true when the government’s regulation was saved from a First Amendment challenge in part because the regulation permitted that particular type of expressive activity.
But suppose the majority is right, and the protesters must show that the First Amendment prohibits the government from issuing regulations that ban leafleting on postal sidewalks deemed to be nonpublic forums. Given that the Postal Service has not yet tried to issue such regulations, it may seem precipitate to reach this issue. The majority’s view seems to require the discussion, however, so I will offer several comments on their analysis. If the protesters must show that postal regulations cannot ban leafleting, then like the majority I conclude that the protesters’ First Amendment claim must fail — the relevant right is not yet clearly established. But I hasten to add that since Kaltenbach did not cross-appeal the District Court’s finding that the protesters had a constitutional right under the First Amendment to leaflet, under our recent decision, Assaf v. Fields, 178 F.3d 170, 174 (3d Cir.1999), the ultimate question of whether the government does have the power to ban all leafleting is not before us.
In analyzing what is clearly established I agree with the majority that the sidewalk leading to the post office in this case is a nonpublic forum, or at least that in the wake of Kokinda the status of the sidewalk is unclear. I also agree that the *442-452 government can impose reasonable restrictions on speech in a nonpublic forum, where a reasonable restriction is one that is “consistent with the[government’s] legitimate interest in preserving] the property ... for the use to which it is lawfully dedicated.” Majority Op. at 433 (quoting Int’l Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 688, 112 S.Ct. 2711, 2712, 120 L.Ed.2d 541 (1992) and Perry Educ. Ass’n v. Perry Local Educators Ass’n, 460 U.S. 37, 50-51, 103 S.Ct. 948, 958, 74 L.Ed.2d 794 (1983)).
My reasoning differs from the majority’s, however, because I rely exclusively on two doctrinal points to conclude that the relevant right is not clearly established. First, Kokinda plainly left the issue unresolved. Second, and much more crucially, when the Supreme Court rejected a ban on leafleting in Lee, Justice O’Connor’s concurrence emphasized that the airport in question was run in part as a shopping mall, supporting many activities, and therefore was unlike other nonpublic forums considered by the Court, such as the postal sidewalk in Kokinda in particular. See Lee, 505 U.S. at 688-89, 112 S.Ct. at 2712-13. Given the airport’s multiple uses, Justice O’Connor’s opinion judged leafleting to be consistent with the functions of the forum.
After reviewing this caselaw, a reasonable official could conclude that postal sidewalks are designed simply to give access to the post office and that, therefore, Lee’s protection of leafleting did not apply and Kokinda does not require otherwise. These points alone are sufficient, I believe, to defeat the claim that it is clearly established that the First Amendment prohibits the government from implementing regulations that ban leafleting on postal sidewalks deemed to be nonpublic forums. One does not need to bring in the majority’s points about the protesters posing a potential obstruction or about police officers delegating their decisionmaking to a postmaster. Neither of these latter factors would justify granting qualified immunity if the relevant right were otherwise clearly established.
But in the end whatever the power of the Postal Service is to ban leafleting on its sidewalks, the fundamental point in this case is that no such ban has been implemented. Leafleting is clearly legal under the Postal Service’s regulations, and therefore I cannot agree that Kaltenbach is entitled to qualified immunity on the plaintiffs’ claims under the First, Fourth, and Fourteenth Amendments. The plaintiffs’ leafleting and criticism of the government should not have been suppressed.

. In Kaltenbach’s statement of undisputed facts he asserts that the postmaster told him that the protesters were a "potential obstruction.” App. at 170. The appellants' response to Kaltenbach's statement of undisputed facts denies that the postmaster made that statement. App. at 180. But because Kaltenbach repeated his claim in a certification, and the certification Paff submitted did not mention whether the postmaster alleged they were a "potential obstruction,” it appears that we should accept Kaltenbach’s allegation for the purposes of this summary judgment motion.