161 F.3d 1030
 Martha D. PAYNE, as mother for the minor child, Christopher
M. HICKS, and for Robert Hicks and Billy Hicks, all minor
children of the deceased Steven M. Hicks, by and personal
representative of the Estate of Steven M. Hicks, Plaintiff-Appellant,
v.
Bob CHURCHICH, William Papa and County of Madison, Illinois,
Defendants-Appellees.
 No. 97-3344.
 United States Court of Appeals,
Seventh Circuit.
 Submitted April 16, 1998.
Decided Nov. 6, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 12, 1999.
 
 Charles R. Douglas (submitted), Glen Carbon, IL, for Plaintiff-Appellant.
 John L. Gilbert (submitted), Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, Edwardsville, IL, for Defendants-Appellees.
 Before FLAUM, RIPPLE and DIANE P. WOOD, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Between 1:00 and 4:04 on the morning of August 3, 1991, right after Steven Hicks had been placed in custody in the holding cell of the City of Madison Police Department, he committed suicide. Martha Payne, representing the children and estate of Mr. Hicks, filed suit in state court, but the case was removed to federal court by the defendants when the plaintiffs' eighth amended complaint added a claim pursuant to 42 U.S.C. § 1983. The district court dismissed the plaintiffs' complaint on the grounds of res judicata and absolute immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). For the reasons discussed in the opinion that follows, we affirm in part the judgment of the district court, albeit on different grounds, and reverse and remand in part.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Shortly after midnight on August 3, 1991, Deputy Sheriff William Papa, Jr. ("Deputy Papa") of the Madison County Sheriff's Department was dispatched to the Two Brothers Motel in Cottage Hills, Illinois, to investigate a person sleeping under the motel owner's vehicle. Deputy Papa awakened the man, Steven Hicks, and moved him out from under the car.[1] Mr. Hicks was highly intoxicated (the complaint states that his blood alcohol content was in excess of 237 milligrams per liter) but awake; he was able to stand without assistance and could tell the Deputy his name and date of birth. Deputy Papa discovered through a computer search that Mr. Hicks was wanted on a warrant, issued by the City of Madison, for failure to appear and for disorderly conduct. Deputy Papa then placed Mr. Hicks under arrest pursuant to the warrant and transported him to the City of Madison Police Department. Mr. Hicks cursed freely and called Deputy Papa names. At approximately 1:00 a.m., the Deputy transferred custody of Mr. Hicks to the City of Madison Police Department, which had issued the warrant, and resumed his normal patrol. At the police department, Mr. Hicks was locked in the holding cell. Sometime between the hours of 1:00 a.m. and 4:04 a.m., while in the custody of the City of Madison Police Department, Mr. Hicks died by suffocation after hanging himself with a blanket in the holding cell of the jail.
 
 B. Procedural History
 
 4
 The children and estate of Steven Hicks brought state wrongful death and survival actions on November 12, 1991, in the Madison County Circuit Court. The original suit was brought against the City of Madison, the City's Board of Fire and Police Commissioners and Dennis Mize, the jailor and dispatcher for the City Police Department. It was not until the filing of the fourth amended complaint on July 31, 1992, that the present defendants--the County of Madison and the County's Sheriff, Bob Churchich, and Deputy Sheriff, William Papa--were added to the complaint. On December 21, 1992, the state court approved a settlement of $110,000.00 between the plaintiffs and the City defendants and dismissed them with prejudice.
 
 
 5
 The plaintiffs continued to file amended complaints in the local circuit court against the County defendants. On January 11, 1996, that state court entered summary judgment on the plaintiffs' seventh amended complaint. It granted judgment in favor of Deputy Papa on the ground that the Deputy Sheriff's conduct did not rise to the level of willful and wanton conduct required for liability under the Tort Immunity Act.[2] The state court also entered summary judgment in favor of the County. It held that, pursuant to the Tort Immunity Act,[3] "[s]ince Deputy Papa is not liable, neither can be the County." State R.18 at 3. Concerning Sheriff Bob Churchich, the court offered several reasons for its entry of summary judgment in his favor. First, it noted, it had dismissed the plaintiffs' complaint against Sheriff Churchich in 1993 on the ground that the allegations of Deputy Papa's willful and wanton conduct did not impose liability on the Sheriff. It further ruled that summary judgment for the Sheriff was proper under the ruling of the Supreme Court of Illinois in Moy v. County of Cook, 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926 (1994), which held that a sheriff is an elected county officer and not an employee of the county government. However, the court reserved ruling as to Counts V and VI, which alleged willful and wanton conduct by the Sheriff, pending the completion of his deposition.
 
 
 6
 On April 23, 1996, the state circuit court granted the plaintiffs leave to file an eighth amended complaint.[4] The complaint included a federal claim, an allegation of the violation of constitutional rights under 42 U.S.C. § 1983. On May 2, 1996, the defendants removed the case to federal district court; on May 28, 1996, they filed a motion to dismiss. When the plaintiffs filed their ninth amended complaint that same day, the defendants moved to dismiss that complaint as well. The plaintiffs' later motion for leave to file a tenth amended complaint was denied.
 
 
 7
 On March 27, 1997, ruling on the plaintiffs' ninth amended complaint, the district court granted the defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). It dismissed the plaintiffs' claims against Deputy Papa by concluding that the state court's grant of summary judgment to Deputy Papa should be given res judicata or preclusive effect.[5] The district court then determined that the County of Madison and County Sheriff Churchich were protected by the Tort Immunity Act's absolute immunity provision.[6] It dismissed the plaintiffs' claim with prejudice. On August 11, 1997, the court denied the plaintiffs' Rule 59(e) motion to amend the judgment. This appeal followed.
 
 II
 DISCUSSION
 A.
 
 8
 This case arrived in federal court with the removal of the eighth amended complaint. The district court granted the plaintiffs leave to file a ninth amended complaint (to clean up the state court complaint, they told the court) but denied their motion for leave to file a tenth amended complaint. We review the district court's refusal to accept the tenth amended complaint for an abuse of discretion. See Crim v. Board of Educ. of Cairo Sch. Dist. No. 1, 147 F.3d 535, 547-48 (7th Cir.1998) (finding no abuse of discretion in the court's refusal to accept a second amended complaint); General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir.1997) (finding no abuse of discretion in denial of fifth amendment to complaint).
 
 
 9
 Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course; after that amendment, a party must request leave of court to file an amended pleading. See Crim, 147 F.3d at 547-48. The rule states that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has stated that leave to amend need not be given if there is an apparent reason not to do so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
 
 
 10
 The district court did not abuse its discretion in deciding not to allow further amendment of the complaint. The magistrate judge noted the plaintiffs' casual acknowledgment of their seriously flawed previous complaints and suggested that they had been dilatory in prosecuting their case. He also noted that the plaintiffs had acknowledged flaws and deficiencies in their ninth amended complaint; in the proposed tenth amended complaint, according to the defendants, the plaintiffs voluntarily had removed the allegations based on agency, cleaned up mistakes and typographical errors and added new theories of recovery. The magistrate judge believed that the adding of new claims and a new theory would prejudice the defendants. He concluded: "The plaintiffs are ... keeping the defendants on a litigation treadmill." R.33 at 3. The district court expressed full agreement with the magistrate judge's assessment. It determined that the plaintiffs had had an adequate opportunity, by filing ten complaints, to "get it right," and concluded that, "after all, ten bites at the apple are enough." R.39 at 1.
 
 
 11
 There is an ample basis for the district court's conclusion that the plaintiffs have been dilatory in prosecuting their case. At the same time that the defendants removed the eighth amended complaint and filed a motion to dismiss it, the plaintiffs filed their ninth amended complaint. The defendants responded with a motion to dismiss that complaint. Five months later, the plaintiffs attempted to amend the complaint again. The plaintiffs admit that their "attorney may have been too meticulous, by submitting unnecessary remakes," but they then complain that they had been "made to suffer from defendants' specious allegations of burdensomeness." Plaintiffs' Reply Br. at 7. The plaintiffs have admitted, in essence, their "repeated failure to cure deficiencies by amendments previously allowed." Foman, 371 U.S. at 182, 83 S.Ct. 227; see General Elec. Capital Corp., 128 F.3d at 1085 (finding no abuse of discretion in dismissal of complaint after plaintiff repeatedly failed to remedy same deficiency). Not irrelevant is the substantial burden to both the opposing party and to the court in having to comb through each amended complaint to find the changes from one complaint to the next. The district court in no way abused its discretion in denying the plaintiffs leave to tender their tenth amended complaint.
 
 B.
 
 12
 The district court applied the principle of res judicata to bar the claims against Deputy Papa. In dismissing those claims, the court reasoned that the state court's grant of summary judgment in favor of Deputy Papa had ended the litigation against Papa. It then gave to the state court judgment "the same full faith and credit" that the courts of Illinois would give it pursuant to 28 U.S.C. § 1738 and held that res judicata applied to bar any other claims against him that arose out of the incident in question.
 
 
 13
 The district court erred in relying on res judicata to dismiss the federal claims against Deputy Papa. At the outset, it is important to keep in mind that this situation does not involve two separate lawsuits, one in state court and another in federal court. Rather, it involves one suit that originated in state court and that was removed to federal court.[7] The doctrine of res judicata limits relitigation of an issue in a subsequent suit. The doctrine of law of the case limits relitigation of an issue at a subsequent stage of the same suit.[8] See Rekhi v. Wildwood Indus., Inc., 61 F.3d 1313, 1317-18 (7th Cir.1995).
 
 
 14
 In the context of removal, once the case is in federal court, the state court orders issued prior to removal are not conclusive but remain binding until they are set aside. See 28 U.S.C. § 1450 (providing that all "orders and other proceedings had in such [state court] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court"); Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 436, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("The 'full force and effect' provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court.").[9] As the Supreme Court explained in Granny Goose Foods, by providing that the state court proceedings are effective in federal court, judicial economy is promoted, and the parties' rights are protected. See 415 U.S. at 435-36, 94 S.Ct. 1113. The district court therefore should not have relied on the doctrine of res judicata in deciding the case. Instead, it should have evaluated the state court proceedings under the law of the case doctrine and, under the principles of that doctrine, declined to revisit any matters that presented no reason for revisitation.
 
 C.
 
 15
 The district court dismissed the plaintiffs' claims against the two other defendants, the County of Madison and Sheriff Churchich, on the ground that they enjoyed absolute immunity as a matter of state law under the Illinois Tort Immunity Act. In this regard, the district court also erred. Immunity on the federal claims, those brought pursuant to 42 U.S.C. § 1983 in this case, is a matter of federal law. As the Supreme Court made clear in Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." Id. at 375, 110 S.Ct. 2430. The Court noted in particular that "[m]unicipal defenses--including an assertion of sovereign immunity--to a federal right of action are, of course, controlled by federal law." Id. at 376, 110 S.Ct. 2430. In the case before us, however, the district court failed to consider whether the governmental defendants were liable or immune under federal law for their alleged federal constitutional violations. Therefore we cannot accept the district court's rationale for dismissing the claims against Sheriff Churchich and the County of Madison.
 
 D.
 
 16
 The earlier discussion makes clear that we cannot sustain the judgment of the district court on the two bases given by the district court. Nevertheless, we may affirm that judgment on any ground supported by the record. See Centres, Inc. v. Town of Brookfield, Wis., 148 F.3d 699, 703 (7th Cir.1998); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996). Indeed, "[i]n the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937) (citing cases). In this case, with a seven-year record before us and essentially legal issues to be resolved in this appeal, we believe that, as a prudential matter and in the interests of judicial economy, we should examine the entire record and should affirm on an alternate basis if the record reveals that the district court's decision was correct. See Golden Nugget, Inc. v. American Stock Exch., Inc., 828 F.2d 586, 590 (9th Cir.1987) (per curiam); Lum Wan v. Esperdy, 321 F.2d 123, 125-26 (2d Cir.1963).
 
 1.
 
 17
 We begin with a review of the federal counts against Deputy Papa. Our review of the legal adequacy of the plaintiffs' complaint is de novo.
 
 
 18
 We turn first to the specifics of the federal constitutional claims set forth in the operative complaint. Counts I and II, one cast in terms of the Fourth Amendment and the other one cast in terms of the Fourteenth Amendment, contain essentially the same allegations. The plaintiffs' complaint alleges that Deputy Papa, working as a sheriff's deputy for Madison County, acted improperly when arresting and detaining Mr. Hicks. The Deputy awoke Mr. Hicks (who had a blood alcohol content in excess of .237 and was sleeping with his body partly under an automobile), determined Mr. Hicks' name and birth date and learned that there was an outstanding warrant for Mr. Hicks' arrest. The Deputy then arrested and took custody of Mr. Hicks pursuant to that warrant and delivered him to the Madison city jail. The complaint alleges Deputy Papa's negligence in failing to treat Mr. Hicks humanely, to provide him medical attention and constant monitoring and supervision, to investigate Mr. Hicks' level of intoxication and medical condition, and to recognize that Mr. Hicks posed a substantial risk of self-harm. As a proximate result of these acts, the complaint asserts, Steven Hicks died by hanging himself in the Madison city jail. The complaint further alleges, in conclusory fashion, that Deputy Papa's conduct was "deliberately indifferent and in callous disregard of" the constitutional rights of Steven Hicks.
 
 
 19
 In assessing these allegations, we begin with the basic proposition:
 
 
 20
 When considering whether the defendants are subject to § 1983 liability, we follow our long-settled rule: "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."
 
 
 21
 Vance v. Peters, 97 F.3d 987, 991 (7th Cir.1996), cert. denied, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir.1994), cert. denied, 513 U.S. 1128, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995)). "The purpose of § 1983 is to deter state actors ... from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998) (quoting Wyatt v. Cole, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)), cert. denied, --- U.S. ----, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998). In alleging a claim under § 1983, plaintiffs must allege facts sufficient to show that the defendants deprived them of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law. See Stevens v. Umsted, 131 F.3d 697, 700 (7th Cir.1997). Here, there is no question that the defendants are state actors. Our focus therefore must be on whether Mr. Hicks was deprived by these defendants of a right or an interest secured by the Constitution.
 
 
 22
 In Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court counseled that, as a threshold matter, a court ought to review the presented claims and to determine the specific constitutional rights allegedly infringed. This determination identifies "the appropriate analytical lens through which facts are to be viewed." Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996). In this case, the plaintiffs have cast their complaint in terms of violations of Mr. Hicks' Fourth, Fifth and Fourteenth Amendment rights. Upon examination of the allegations of each of these counts, however, it is clear that Mr. Hicks essentially is alleging maltreatment while in custody as a pretrial detainee. Under the prevailing case law, such allegations are treated as claims under the Due Process Clause of the Fourteenth Amendment.[10] We shall therefore review these allegations under that analytical framework.
 
 
 23
 Mr. Hicks, brought into the jail pursuant to an outstanding warrant, was a pretrial detainee, a person "[b]etween the status of free citizen and convicted prisoner." Wilson, 83 F.3d at 875. A pretrial detainee has not been found guilty of a crime and therefore may not be "punished" by the state. See Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). With respect to his treatment while in custody, the detainee is protected by the Due Process Clause of the Fourteenth Amendment; that protection is at least as great as the protection a convicted prisoner is afforded under the Eighth Amendment.[11] See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); Bell, 441 U.S. at 535 n. 16, 99 S.Ct. 1861. As the Supreme Court made clear recently in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), a detainee therefore is protected from the "deliberate indifference" of prison officials:
 
 
 24
 Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial.
 
 
 25
 County of Sacramento, 118 S.Ct. at 1718. The Supreme Court distinguished among three levels of fault--negligence, deliberate indifference and conduct that shocks the conscience. It stated that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," id., that "deliberate indifference" is the standard to employ "when actual deliberation is practical" (such as in the custodial situation of a prison), id. at 1719, and that "a much higher standard of fault than deliberate indifference has to be shown for officer liability in a prison riot" or in a high-speed chase, id. at 1720.[12] That higher standard is the "shocks-the-conscience" test. Id.
 
 
 26
 We have applied the deliberate indifference standard to a pretrial detainee's § 1983 claim. See Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir.1996). When the § 1983 claim is based on a jail suicide, the degree of protection accorded a detainee is the same that an inmate receives when raising an inadequate medical attention claim under the Eighth Amendment--deliberate indifference. See Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir.1997) ("A prison official violates the Eighth Amendment (which applies to persons who have been convicted) and the due process clause of the Fourteenth Amendment (which applies to pre-trial detainees ...) when he is deliberately indifferent to a substantial risk of serious harm to an inmate ...."), cert. denied, --- U.S. ----, 118 S.Ct. 603, 139 L.Ed.2d 891 (1997); see also Estate of Cole v. Fromm, 94 F.3d 254, 259 & n. 1 (7th Cir.1996), cert. denied, 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997); Hall v. Ryan, 957 F.2d 402, 405-06 (7th Cir.1992). A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger. See Mathis, 120 F.3d at 91 (stating that "a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless"); Estate of Cole, 94 F.3d at 259 (requiring proof of "deliberate indifference" and rejecting proof merely of "negligent treatment").
 
 
 27
 When we turn to the allegations of the complaint, it is clear that, even when read so that all inferences are made in favor of the plaintiffs, no due process claim is stated. There is a single conclusory allegation that Deputy Papa's conduct was "deliberately indifferent and in callous disregard" of Mr. Hicks' constitutional rights. Nevertheless, the plaintiffs' specific factual allegations concerning Deputy Papa's conduct do not state actions that could possibly constitute "deliberate indifference" or an "intentional or criminally reckless manner"[13] during the arrest or transport of Mr. Hicks to the Madison city jail.[14] Although the complaint contains the single cursory allegation that Deputy Papa's conduct was "deliberately indifferent and in callous disregard" of Mr. Hicks' constitutional rights, the conduct alleged to support that claim constitutes negligence and nothing more. None of the factual allegations could support a claim that Deputy Papa was deliberately indifferent to, or acted in conscious disregard of, a known or substantial risk of harm to Mr. Hicks. "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir.1997). As we have noted earlier, our cases dealing with § 1983 claims based on a pretrial detainee's suicide have held that a state actor like Deputy Papa can be held liable for a detainee's suicide only if the defendant was deliberately indifferent to a substantial suicide risk.
 
 
 28
 In this case, the plaintiffs do not allege that any of the defendants knew that Mr. Hicks posed a danger to himself. However, they do allege that Deputy Papa should have been aware that Mr. Hicks intended to commit suicide because his tattoo questioned life and because he cursed angrily. We have held that knowledge of a substantial risk of suicide can be inferred from the obviousness of the risk. See Estate of Cole, 94 F.3d at 260. However, we do not believe that the allegations in the complaint about Mr. Hicks' conduct and tattoo message, without more, indicate an obvious, substantial risk of suicide. There is no allegation of Mr. Hicks' suicidal tendencies, no claim or evidence of past suicide attempts or warnings from family members of a mental disturbance and suicidal condition. See Hall, 957 F.2d at 404-05. Mr. Hicks' behavior was not alleged to be increasingly bizarre, erratic or wild. See id.; State Bank of St. Charles, 712 F.2d at 1146; cf. Estate of Cole, 94 F.3d at 262 (holding that the same standard applies to allegations of improper medical treatment as evidence of "deliberate indifference"). None of the facts alleged in this case--Mr. Hicks' intoxication, cursing and tattoo--raises an issue of whether Deputy Papa had knowledge of, or even particular reason to suspect, a substantial risk of suicide on Mr. Hicks' part. Cf. State Bank of St. Charles, 712 F.2d at 1146 (determining that the officers' knowledge that the detainee was intoxicated, uncooperative, violent and "acting in a 'freaky' manner is not synonymous with knowing that the violence might become self-directed"). Indeed, the allegations set forth acts and conduct that, if established, could constitute only negligence. See Mathis, 120 F.3d at 92 (holding that the county officials' negligent failure to keep a closer eye on a pretrial detainee who committed suicide did not support the requisite finding of deliberate indifference). Because "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," County of Sacramento v. Lewis, 523 U.S. 833, ----, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998), the alleged behavior of Deputy Papa does not rise to the level of deliberate indifference and thus cannot support a constitutional claim under § 1983. Because negligence is "a state of mind inconsistent with the requisite breach of duty necessary to constitute a constitutional deprivation," claims based on particular allegations of negligence must be dismissed. Antonelli, 81 F.3d at 1429. Therefore we must affirm the dismissal of Counts I and II.[15]
 
 2.
 
 29
 The complaint's Count XI, the last federal claim, appears to allege that Madison County violated the Constitution by having failed to maintain an adequate confinement facility. The complaint alleges that the Madison County jail was overcrowded and that the County had a duty to provide a sufficient jail facility. It also claims that the County was deliberately indifferent to the rights of Steven Hicks and other prisoners and detainees because it failed to provide sufficient jail space and to provide funds for such space. The proximate result of the County's failures was that Steven Hicks was housed in a city lockup where he was not sufficiently protected from self-inflicted injuries and where, therefore, he committed suicide. "The actions of the responsible county officials and county board violated Steven Hicks' constitutional rights of due process and equal protection under the Fourteenth Amendment." Count IX, p 31.
 
 
 30
 As we previously have noted, the district court appears to have been under the misapprehension that the County enjoyed the same immunity with respect to this count that it enjoyed under state law. But immunity under § 1983 is a matter of federal law. See Howlett v. Rose, 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law.").
 
 
 31
 Under § 1983, a municipality can incur liability if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners. See Baskin v. City of Des Plaines, 138 F.3d 701, 704-05 (7th Cir.1998) (recognizing that a municipality can be said to have violated an individual's constitutional rights by its "express policy that, when enforced, causes a constitutional deprivation," or by its "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"). This count alleges that the County maintained its own confinement facility with deliberate indifference and callous disregard[16] for the welfare of the inmates and thus caused this prisoner to be housed in conditions that led to his demise. It does not allege, however, a sufficient factual predicate for the essential element that the County's placement of Mr. Hicks in the city jail was done pursuant to a policy that evinces reckless disregard for his safety. The count alleges that Mr. Hicks was not incarcerated in the county facility but in the city lockup. However, more is needed. The pleading on this Count does not allege adequately that those responsible for county policy permitted the placement of county prisoners in the city facility despite the risk that such placement would result in serious harm to the prisoners' safety. Although the complaint states that responsible officials knew that better protection against self-inflicted injuries was available at the overcrowded county facility, it does not allege that those officials knew that placement in the city jail exposed Mr. Hicks to a substantial risk of such injury. There is no factual allegation to support the proposition that the placement of Mr. Hicks in the city jail was done with depraved indifference to his safety. Without such an allegation, this count is inadequate and must be dismissed.
 
 E.
 
 32
 Because the district court disposed of all the federal claims, it then focused on the supplemental state claims. It had the discretion to remand these claims to the state court or to address them itself. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Indeed, when the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations. See Wright v. Associated Ins. Cos., Inc., 29 F.3d 1244, 1251 (7th Cir.1994). Although the district court did not articulate a reason, it appears that, in this case, it decided to address the merits because the state claims could be easily decided on the record before it. We turn therefore to the state claims and the district court's disposition of them.[17]
 
 
 33
 Count III alleges that County Sheriff Churchich is vicariously responsible for the conduct of his agents, including Deputy Papa and Madison city jailor Mize. To the extent that the rambling language of this count might be construed to allege vicarious liability for federal constitutional violations committed by others, it fails because, as we have already noted, § 1983 does not permit vicarious liability. See Davis v. Zirkelbach, 149 F.3d 614, 619 (7th Cir.1998); Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir.1996). To the extent that it alleges vicarious liability under state law, the Sheriff is immune under the provisions of the Illinois Tort Immunity Act.[18] See 745 ILCS 10/2-204.
 
 
 34
 Count IV alleges that Madison County failed to provide and fund a sufficient jail facility for misdemeanant arrestees and to protect its inmates against self-inflicted harm. It further alleges that Sheriff Churchich, with the support and approval of the County, implemented a policy of housing misdemeanant arrestees in city lockups, in violation of state statutes, common law and applicable regulations, when the county jail was better equipped and its personnel better trained to provide sufficient protection. It claims that the County's acts in failing to provide proper jail space and maintenance for misdemeanant arrestees "were deliberately indifferent and in callous disregard of, and in violation of the constitutional rights of the populace of Madison County, its detainees and arrestees, including Steven Hicks." Complaint, Count IV p 20. The proximate result of such acts was that Hicks was housed in a city lockup where he was not sufficiently protected from self-inflicted injuries, resulting in his suicide.
 
 
 35
 This claim fails because of the immunity bestowed by § 4-103 of the Illinois Tort Immunity Act, which provides:
 
 
 36
 Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires periodic inspection of prisoners.
 
 
 37
 745 ILCS 10/4-103. The Illinois courts have held that the immunity afforded by § 4-103 was intended by the Illinois legislature to be absolute. See Jefferson v. Sheahan, 279 Ill.App.3d 74, 215 Ill.Dec. 815, 664 N.E.2d 212, 215-17 (1996) (discussing cases). The mere incantation of the "deliberately indifferent standard," unsupported by factual allegations that would support such a charge, does not change the result. We further note that one Illinois appellate court, reviewing facts quite similar to those before us in this case, held that the city and its police officers were immune under § 4-103 from the plaintiff's claims that their conduct was negligent or willful and wanton. In Fraley v. City of Elgin, 251 Ill.App.3d 72, 190 Ill.Dec. 407, 621 N.E.2d 276 (1993), a pretrial detainee suicide case, the detainee was severely intoxicated and exhibited unusual behavior during his transport to the police station after his arrest. At the station he was placed in "solitary confinement" and was not checked on a regular basis. Sometime later that day, he was found dead in his cell, having hung himself. The court dismissed the complaint's claims that the defendants failed to monitor or to maintain a jail facility in a manner that would safeguard the decedent from self-harm. It noted that there was no showing that the defendants were on notice of any indications of suicide or that they acted with willful and wanton indifference to a life-threatening incident. As a result, the court concluded that defendants were immunized from claims arising out of the failure to provide sufficient facilities under § 4-103. See id. at 280. Likewise, the County of Madison is immune from liability pursuant to § 4-103 of the Illinois Tort Immunity Act on the allegations set forth in this count. As a local public entity, the County is immune from liability for failing "to provide sufficient ... supervision or facilities" and for failing to provide "periodic inspection of prisoners." 745 ILCS 10/4-103.
 
 
 38
 Count VII alleges deliberate indifference on the part of Deputy Papa in releasing Mr. Hicks to the Madison City Police Department. It claims that Deputy Papa was responsible for Mr. Hicks and was vicariously responsible for the conduct of his agents, the City Police Department. Their failure to protect Mr. Hicks from self-harm proximately resulted in his death, and Deputy Papa is vicariously liable, according to the allegations. The Illinois Tort Immunity Act precludes liability on such a basis. See 745 ILCS 10/2-204 (providing that a public employee is "not liable for an injury caused by the act or omission of another person").
 
 
 39
 The remaining counts, Counts VIII, IX and X, are brought under state law against Sheriff Churchich. All three repeat the allegations that Deputy Papa had a duty to incarcerate Mr. Hicks in the Madison County jail rather than in the Madison City jail and that he negligently and intentionally relinquished Mr. Hicks to the Madison City jail. All three claim that Sheriff Churchich was vicariously responsible for the conduct of Deputy Papa and the City Police Department. All three counts assert that the Sheriff's conduct was done "negligently and with deliberate indifference and in callous disregard of Steven Hicks' rights." p 87. Count VIII further alleges that "Defendant Churchich ... instituted a policy ... where he ignored his duties and ordered his deputies and jailors to house state charged misdemeanants in city lockups, if available, as opposed to placing them in the county jail." p 87. Count IX alleges that Sheriff Churchich "failed to require any training of his deputies beyond the minimal training they initially received to become deputies." p 87. Count X alleges that Sheriff Churchich "entrusted the City of Madison with his prisoners' care, including Steven Hicks." p 87.
 
 
 40
 Many aspects of these counts cannot stand. Indeed, the plaintiffs admit that the allegations of vicarious liability based upon an agency relationship between the County Sheriff and the City of Madison cannot stand. In any event, because Deputy Papa is not held liable for his conduct, the Sheriff cannot be vicariously liable.
 
 
 41
 One aspect of these counts is, however, of greater concern. Although the Illinois Tort Immunity Act and its case law make clear that a sheriff is immune from liability when he exercises the discretionary powers of his office,[19] that liability does not extend to willful and wanton acts. The complaint charges that the County Sheriff, Churchich, instituted policies for housing arrestees in the City lockup and, in an exercise of discretion, entrusted prisoners to the care of the City.[20] It also charges that he is liable for failure to train his deputies beyond their initial training.[21] If the complaint simply alleged that Sheriff Churchich is a public official whose position requires the determination of policy or the exercise of discretion, and the act or omission that caused the injury was "both the determination of policy and an exercise of discretion," he would enjoy the immunity provided by the Act. Harinek v. 161 North Clark St. Ltd. Partnership, 181 Ill.2d 335, 230 Ill.Dec. 11, 692 N.E.2d 1177, 1181 (Ill.1998). The Illinois Tort Immunity Act provides in pertinent part:
 
 
 42
 A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.
 
 
 43
 720 ILCS 10/2-201. Such immunity has been held to be absolute. Johnson v. Mers, 279 Ill.App.3d 372, 216 Ill.Dec. 31, 664 N.E.2d 668, 675 (1996). However, as we have just noted, the Illinois Tort Immunity Act does not protect the Sheriff from allegations that he acted in a willful and wanton manner. Counts VIII, IX and X also allege in part that the Sheriff knew that conditions in the city jail created a substantial risk of self-harm to Steven Hicks and that the Sheriff nevertheless ordered his Deputy to place the prisoner there.
 
 
 44
 It may well be that these allegations are without foundation. The record developed in the state court prior to transfer contains evidence that renders these allegations suspect. Nevertheless, because the state court did not have an opportunity to adjudicate the matter definitively prior to removal and because it appears that the court did not consider the factual development of the record complete, we cannot, at this juncture, rule on the matter. Instead, we must return the case to the district court. That court then must determine anew whether it ought to retain jurisdiction of these surviving state claims or to remand them to state court for further proceedings. In making that decision, the district court ought to examine carefully the state of the record as transmitted upon removal and, in light of the familiarity of the state court with this matter, weigh heavily considerations of judicial economy.
 
 Conclusion
 
 45
 For the reasons set forth in the foregoing opinion, we affirm the judgment of the district court with respect to the dismissal of all counts of the complaint except Counts VIII, IX and X. These surviving counts are remanded for further consideration of the particular allegations identified in this opinion as not susceptible to dismissal at this juncture. The district court shall proceed in conformity with this opinion. The parties shall bear their own costs on this appeal.
 
 
 46
 AFFIRMED in part, REVERSED and REMANDED in part.
 
 
 
 [1]
 The plaintiffs allege in their complaint that Mr. Hicks had come from Florida to attend his brother's funeral and just had learned that a niece had died in a car accident; that he was shocked and distressed; that he became excessively drunk after the funeral; and that he went to the motel, where another brother was staying, and lay under a car to commit suicide. The hotel manager happened to discover him halfway underneath his car and called the sheriff's department. The plaintiffs also allege that "Hicks questioned the value of life, and so indicated by an obvious homemade tattoo on his right arm which stated, 'Is life?'." R.10 p 7
 
 
 [2]
 The pertinent provisions of the Tort Immunity Act are:
 10/2-201. Determination of policy or exercise of discretion
 § 2-201. Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.
 10/2-202. Execution or enforcement of law
 § 2-202. A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.
 10/2-204. Acts or omissions of another person
 § 2-204. Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.
 
 
 [745]
 ILCS 10/2-201, 10/2-202, 10/2-204
 
 
 [3]
 745 ILCS 10/2-109 states: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."
 
 
 [4]
 At the April 23, 1996, hearing, the circuit court denied plaintiffs' motion to reconsider summary judgment in favor of Deputy Papa but granted the motion with respect to Madison County and Sheriff Churchich. It granted plaintiffs leave to file another complaint, but allowed the amended complaint only as to the Sheriff and the County. However, the amended complaint named Deputy Papa in counts I, IV and V
 
 
 [5]
 According to the district court:
 Although this litigation is merely a continuation of the state court litigation rather than a second litigation, the principles of full faith and credit and the rationale behind res judicata are equally applicable. Specifically, all of the elements of res judicata are present: [A]ll of the parties are the same, the causes of action are identical and, as far as Papa, there was a final judgment on the merits. When the state court entered summary judgment in favor of Papa, the litigation against Papa was effectively ended. Because res judicata applies to all claims that were raised or could have been raised in the earlier litigation, plaintiffs may not maintain any claims against Papa that arose out of the incident in question.
 R.45 at 5.
 
 
 [6]
 745 ILCS 104. -103 provides: "Neither a local public entity nor a public employee is liable for failure to provide a jail ... or ... for failure to provide sufficient ... supervision ... therein. Nothing in this Section requires periodic inspection of prisoners." The district court noted that the immunity afforded by § 4103 was intended to be absolute. See R.45 at 7 (citing Jefferson v. Sheahan, 279 Ill.App.3d 74, 215 Ill.Dec. 815, 664 N.E.2d 212 (1996))
 
 
 [7]
 We note that the defendants timely filed their notice of removal of the eighth amended complaint within the 30-day period established by 28 U.S.C. § 1446(b). In addition, the record reveals that, after the plaintiffs filed their eighth amended complaint in state court, the defendants did not file documents in state court or otherwise engage in any defensive action that might constitute waiver of removal. See Erwin Chemerinsky, Federal Jurisdiction § 5.5, at 327 (2d ed.1994). Finally, we note that the plaintiffs did not appeal the state court final summary judgment with respect to Deputy Papa pursuant to Illinois Supreme Court Rule 304(a)
 
 
 [8]
 Under the doctrine of law of the case, the general maxim is that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). In Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Supreme Court described the doctrine as one that "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." Id. at 816, 108 S.Ct. 2166. It noted that the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Id. at 817, 108 S.Ct. 2166 (quoting Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (Holmes, J.)). Nevertheless, it commented, a court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " Id. (quoting Arizona, 460 U.S. at 618 n. 8, 103 S.Ct. 1382); see also Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) (determining that it would not apply the law of the case because adherence to earlier decision would work a "manifest injustice"). Emphasizing the practical policies at the foundation of the doctrine, one "crafted with the course of ordinary litigation in mind," 460 U.S. at 618, 103 S.Ct. 1382, the Supreme Court pointed out in Arizona that "a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." Id. at 619, 103 S.Ct. 1382; see also United States v. United States Smelting Ref. & Mining Co., 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950) (determining that law of the case was not applicable because, on remand, no final decision was made)
 
 
 [9]
 Although, under the doctrine of law of the case, we treat decisions on legal issues made at one stage of a case as " 'binding precedent to be followed in successive stages of the same litigation,' " see Roboserve, Inc. v. Kato Kagaku Co., Ltd., 121 F.3d 1027, 1031 (7th Cir.1997) (quoting 1B James Wm. Moore et al., Moore's Federal Practice p 0.404(1) (2d ed.1974)), the doctrine "never blocks a higher court from examining a decision of an inferior tribunal." In re Reliable Drug Stores, Inc., 70 F.3d 948, 951 (7th Cir.1995)
 
 
 [10]
 The Fourth Amendment covers only searches and seizures. As the Supreme Court explained in Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the "Fourth Amendment addresses 'misuse of power,' " id. at 596, 109 S.Ct. 1378 (citation omitted), and a seizure violative of the Fourth Amendment occurs "only when there is a governmental termination of freedom of movement through means intentionally applied," id. at 597, 109 S.Ct. 1378. In his incident report, Deputy Papa stated that the computer check revealed that Steven Hicks was wanted on a warrant issued by the City of Madison for failure to appear and disorderly conduct, and that bond was set at $2,000. Following the arrest, Deputy Papa transported Mr. Hicks to the City of Madison jail and placed him in the City's custody. The validity of the warrant was confirmed when Deputy Papa arrived at the Madison Police Department with Mr. Hicks. The complaint's only allegations concerning those acts are the Deputy's failure to monitor Mr. Hicks or to recognize the risk that he might harm himself. Therefore, in this case, as in County of Sacramento v. Lewis, 523 U.S. 833, ----, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998), neither a search nor a seizure took place. Indeed, the plaintiffs do not claim there was a search and do not challenge the arrest. See Appellants' Reply Br. at 31-32 ("[P]laintiffs are not claiming Hicks' arrest itself was unreasonable. They claim his treatment after arrest was unreasonable."). Mr. Hicks' arrest, made pursuant to a valid warrant, is appropriately analyzed under the Due Process Clause rather than the Fourth Amendment. See Armstrong v. Squadrito, 152 F.3d 564, 569 (7th Cir.1998) (concluding that the plaintiff's Fourth Amendment claim "drops out of the case" when his arrest is pursuant to a valid warrant because the Fourth Amendment " 'governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause' ") (quoting Villanova v. Abrams, 972 F.2d 792, 797 (7th Cir.1992)) (emphasis added)
 
 
 [11]
 In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court established that the test for Eighth Amendment liability of a prison official is deliberate indifference to the inmate's health or safety. Liability will lie only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. 1970
 
 
 [12]
 The Court developed the distinction between "mid-level fault" and the higher standard of fault:
 [L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.... But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for Due Process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.
 County of Sacramento, 118 S.Ct. at 1720 (internal citation omitted).
 
 
 [13]
 We need not reach the question whether the allegations of this count set forth a sufficient causal nexus between the alleged constitutional violation (the maintenance of an inadequate county confinement facility) and the injury to Mr. Hicks in the city jail
 Our analysis of the federal claims is limited to the face of the complaint. However, we note in passing that the Madison County Circuit Court held that Deputy Papa was not liable under the Illinois Tort Immunity Act, 745 ILCS 10/2-201, because his conduct was not willful and wanton. The court noted that a defendant's acts are characterized as "willful and wanton" under Illinois law when they are "committed with actual or deliberate intention to harm or with utter indifference or conscious disregard for the safety of others." State R.18 at 2 (citing 745 ILCS 10/1-210; Breck v. Cortez, 141 Ill.App.3d 351, 95 Ill.Dec. 615, 490 N.E.2d 88, 94 (1986)). Although this standard of conduct for state actors, under state law, is not precisely defined as "deliberate indifference," the definitions are remarkably similar. See also Hall v. Ryan, 957 F.2d 402, 405 (7th Cir.1992) (equating "wilful neglect" with "deliberate indifference"). The record supports both determinations that Deputy Papa's conduct was neither "willful and wanton" nor "deliberately indifferent."
 
 
 [14]
 See Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir.1996) ("A prison official violates the constitutional rights of a pretrial detainee only when he acts with deliberate indifference.") (citing Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir.1991)); see also Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir.1998) (defining "deliberate indifference," for constitutional claims other than Eighth Amendment claims, as "conscious disregard of known or obvious dangers"); cf. State Bank of St. Charles v. Camic, 712 F.2d 1140, 1147-48 (7th Cir.) (holding that complaint's allegations did not support claim of Fifth or Fourteenth Amendment constitutional deprivation because nothing in the police officers' conduct was intended to culminate in the pretrial detainee's suicide or was shocking to the conscience), cert. denied, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983)
 
 
 [15]
 Counts V and VI must also be dismissed. Count V, cast in terms of the Fourth Amendment, contains essentially the same factual allegations as Count I. It adds the specific allegation that Deputy Papa had a duty to incarcerate Mr. Hicks in the county facility rather than the city jail. It also claims that Deputy Papa was responsible vicariously for the conduct of the city police department and the city jailor. We have already noted that the plaintiffs' claim is not properly brought under the Fourth Amendment but under the Fourteenth Amendment. In any event, the count contains the same allegations as Counts I and II and therefore does not state a cause of action. The allegations of vicarious liability do not change the situation. Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability. See Davis v. Zirkelbach, 149 F.3d 614, 619 (7th Cir.1998); Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir.1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997)
 Count VI, cast in terms of the Fourteenth Amendment, makes the same allegations as Count V. Because the allegations do not set forth anything other than negligence and because liability under § 1983 cannot be premised on vicarious liability, this count must also be dismissed.
 
 
 [16]
 See Antonelli v. Sheahan, 81 F.3d 1422 (7th Cir.1996):
 In order to violate the Eighth Amendment, the condition of confinement must be a denial of "basic human needs" or "the minimal civilized measure of life's necessities." The infliction must be deliberate or otherwise reckless in the criminal sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable.... A condition of confinement may be imposed on a pretrial confinee without violating the Due Process Clause if it is reasonably related to a legitimate and nonpunitive governmental goal. It may not be arbitrary or purposeless.
 Id. at 1427 (citations omitted).
 
 
 [17]
 As a threshold matter, we pause to address a preliminary issue that affects several of the supplemental claims. The plaintiffs suggest in their briefs that some of these counts contain or imply constitutional claims. See Appellants' Reply Br. at 5-6. For example, in many counts the plaintiffs allege, in conclusory fashion, that the defendants had "common law, statutory, and constitutional" duties to protect Hicks from harm and to investigate the cause of his excessive intoxication. We believe that any reference to federal causes of action in these counts is far too opaque to permit adjudication and we shall not consider them. See Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir.1996) ("In order to invoke the protection of the Constitution,... something more than a conclusory allegation is necessary.")
 
 
 [18]
 Plaintiffs contend that a "special duty exception" to the Tort Immunity Act applies to all three defendants. However, the special duty exception to statutory immunity is no longer viable in Illinois. The Supreme Court of Illinois recently has held that "the imposition of the special duty exception to override the legislatively created governmental immunities in the Tort Immunity Act violates the sovereign immunity provisions ... and also violates the separation of powers clause of the Illinois Constitution." Zimmerman v. Village of Skokie, 183 Ill.2d 30, 231 Ill.Dec. 914, 697 N.E.2d 699, 710 (Ill.1998); see also Harinek v. 161 North Clark St. Ltd. Partnership, 181 Ill.2d 335, 230 Ill.Dec. 11, 692 N.E.2d 1177, 1183-84 (1998) (holding that the special duty doctrine may not operate to negate immunities or to impose liability on a public entity found immune). Thus we will consider whether these governmental defendants are immunized from liability under the Tort Immunity Act
 
 
 [19]
 Sheriff Churchich is a county official. See Moy v. County of Cook, 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926, 931 (Ill.1994)
 
 
 [20]
 Although plaintiffs suggest in their briefs that they are raising a claim of negligent entrustment, we do not believe that such a doctrine is applicable. "An action for negligent entrustment consists of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a dangerous manner." Johnson v. Mers, 279 Ill.App.3d 372, 216 Ill.Dec. 31, 664 N.E.2d 668, 674 (1996) (citing Zedella v. Gibson, 165 Ill.2d 181, 209 Ill.Dec. 27, 650 N.E.2d 1000 (1995)). We fail to believe that the plaintiffs considered the City lockup a "dangerous article" over which the Sheriff had superior right of control. See id. (holding that police department did not control officer's service revolver and therefore negligent entrustment claim was not actionable)
 
 
 [21]
 We note that the legislature has charged a sheriff with responsibility for the hiring and training of all personnel needed to maintain the jail. See 730 ILCS 125/3; Moy, 203 Ill.Dec. 776, 640 N.E.2d at 929